Here is the second case of the morning called 210-0871, William McManaman v. First Health Group Corp. and Coventry Health Care Team. On behalf of the Adelaide, Mr. Kevin Clancy. On behalf of the Adelaide, Mr. Jeffrey Clark. Gentlemen, I just want to advise you that we do have a third panel member who is unable to be with us today. However, he will participate in the decision in this case, listening to it by way of tape. And it's Justice Bowman. You may proceed. Thank you, Your Honor. Would you like me to wait for Justice Hudson? Oh, I didn't see you. Did you not come in behind me? I did. You left. I'm sorry. Good morning, and may it please the Court, my name is Kevin Clancy, and I represent the plaintiff, William McManaman, in this case. This is the second appeal in this matter, and if I could, I'd like to begin with the discussion of the attorney's fees that were incurred on remand related to tax issues. When the appellate court issued its first opinion in this case... Counsel, just to clarify, are you questioning the issue of interest and attorney's fees, or just attorney's fees? Interest and attorney's fees. But just to begin with the attorney's fees issue, when the case first started, there were three items that Mr. McManaman, the plaintiff, was seeking in this case, and that was a change in control payment under his contract, a term completion payment, and an excise neutralization payment, which is a very complicated calculation designed to offset the tax impact to the plaintiff. He prevailed with respect to the change in control payment and the excise neutralization payment, what I'll call the ENP, and appealed because the defendant prevailed with regard to the term completion payment. This Court in March of 2009 held that the plaintiff was entitled to that term completion payment. Several things happened then. As soon as he was entitled to that term completion payment, the amount of his total payments was above the safe harbor level for the point at which excise taxes are imposed. So at that very moment in time, excise taxes then became an issue. The defendants claim, and the circuit court agreed with them, that taxes were never an issue on remand. And the defendants also claim that they never denied their obligation to calculate and to pay the excise neutralization payment on remand. We believe that this... You're saying that you never denied your obligation to pay. No, the defendant is saying... The defendant's position in this Court is they never denied that they were obligated to calculate the ENP and to pay the ENP. We believe that this really amounts to revisionist history that the circuit court accepted. The facts of the case, I think, are overwhelmingly clear that taxes were an issue on remand. First of all, much is made of the fact that the mandate or the original appellate court opinion didn't address taxes. Well, that's not surprising, because the issue at the time was the term completion payment. The reality is that once that term completion payment was awarded, the excise neutralization payment ripened into a real and legitimate issue. And the remand simply said that it was a remand for proceedings consistent with the disposition. Exactly, Your Honor. And that was going to be my next point, that what it says, as they often do, remanded for proceedings consistent with this opinion. We believe that what's consistent with the opinion is enforce the term completion payment, and in addition, there's an existing circuit court order from 2007 that the plaintiff is entitled to this ENP. The circuit court... But why would he give the, why would the taxes, and what you're looking at is retroactive taxes from the time of the appeal, where it was not an issue at the time. Well, it's not so much, we're not looking for retroactive taxes. There's really not a dispute here as to how much that tax payment was. So that payment has been made. The parties agreed as to what the tax, amount of the tax payment was. It took some time, but they mentioned it. Right. It took a lot of time. What it really took was fighting, was the plaintiff fighting tooth and nail. And one of the reasons we're here today is because the plaintiff believes that if it has to fight tooth and nail to get what it's entitled to get, it ought to get its attorney's fees for that.  So the circuit court actually, although at the time of ruling on fees, the circuit court said taxes were not an issue, that's not what the circuit court said initially. Initially, what the court said was, well, there was an ENP ruling in 2007. It wasn't reversed on appeal. And this is a quote. So we retained jurisdiction to determine the amount due, that is, the amount of the ENP. So the court is recognizing we're here on remand, and one of our jobs is to determine the amount of the ENP. In addition, the circuit court not once but twice directed the parties to engage in settlement negotiations to try to resolve the tax issues. That's a clear indication that there are tax issues at play on remand. If not, what would be the point of having the parties sit down and try to talk about this?  Well, let me ask you, because that raises another issue. How do you respond to the argument that by acquiescing in the suggestion by the trial court that you were going to try and negotiate the issue, the excise tax issue, that you sort of acquiesced and then the meter shouldn't be running because you went along with this procedure? Well, it isn't so much that the plaintiff acquiesced. And the issue really there is did the – by acquiescing, did the plaintiff agree to do it for free? And I don't think that's the case. That could be the argument from the other side, right? That could be the argument from the other side. The argument there – as I understand it, the argument they're making is that taxes were never at issue and they never denied their obligation to calculate and to pay. So that's a little bit different. But I could see that that's an argument that they may make. I think that – It had in response to the argument they got lulled into a false sense of security as well. Well, the contract provides that the plaintiff is entitled to reasonable attorney's fees. And I think that it is reasonable for the parties in response to a direction from the courts to engage in settlement negotiations to engage in those settlement negotiations. I don't think that anybody would have expected that that was being done for free. I think it would have been unreasonable for the plaintiff to say thanks but no thanks, Your Honor. We're not going to do it. So you're saying if there's an overarching obligation on their part to pay, it doesn't go away simply because there's a law. Right. And in addition, during those negotiations, what we have is an issue of this very complicated excise tax and the excise tax neutralization payment. But that wasn't the threshold issue we addressed in the negotiations. Right out of the gate, the very first thing the defendants did – and they admit they did it – was interjected a new tax issue into the game of this supposed obligation of the plaintiff to pay his own excise tax under Section 409A of the Income Tax Code. So the very first thing that the plaintiff had to do was cross that hurdle, a hurdle that never should have been raised, because the plaintiff's expert opinion, which is uncontradicted in the record – there's no contrary expert opinion to contradict it – said there's no reasonable basis for that. So the first thing we had to do was spend a lot of time fighting with the defendant about this threshold obstacle they raised. Once we did that, then we had to fight about whether or not they were going to own up to their obligation to make the excise neutralization payment. They say here that we never denied. You shouldn't have just sat back on your heels and you shouldn't have just been patient. You were rational and patient and you shouldn't get those attorney's fees. I think the record shows that at every turn, in this case from 2005 to today, the plaintiff has imposed and put forth whatever obstacles and obfuscation and hurdles they can possibly imagine to make it as expensive and time-consuming. So your position is, hey, look, if we've got to engage in these attorney's fees or incur these attorney's fees in enforcing the contextual obligations, we've got to get paid. That's exactly right. What was the timeframe between the, I think it was telephone conversations, most of these were, from the first telephone conversation until finally there was an agreement with respect to this tax amount? The very first telephone conversation was December of 2009, and the agreement, when defendants finally looked at our expert opinion as to the amount and said we agree with that, was April 26th. 2010. 2010. So we're looking at just under four months, and it was a very active four months. The defendants also admitted that dealing with the tax issues was a significant hurdle before we could even get paid our term completion payment, and here's what took place on April 14th. The circuit court asked the defendants, is there any dispute about the term completion payment that the appellate court said he's entitled to? They said, no, we agree on the amount. Why doesn't he have a check? The answer, quote, because what we've been trying to do is structure a settlement that would be tax beneficial to both sides tax-wise. So the defendants admitted, plaintiff's got a right to this term completion payment, but we're not there yet because we're wrangling over taxes, and the plaintiff doesn't think you just have to wrangle for free. Now, how many, this probably goes on to the next issue, to a different issue, but there was a second check. There was an initial check written, correct? That was what your client did not cash. Yes. Now, that is true. That brings up another issue in this case was whether post-judgment interest should apply during the time period when the new check was being issued. The first check was for a gross amount without taxes being withheld. We contended that this was an employee payment, so taxes should have been withheld, and there are consequences if they're not because then you're treated as self-employed, and then you pay both the employer and the employee portion of Social Security and Medicare. Everybody in that courtroom, the plaintiff, the defendant, and the circuit court, all agreed that the tender of that check was improper. The plaintiff contended that. The defendant said what we failed to do was tell our client to withhold taxes. Failed to do means we did something wrong. The check is not right. The circuit court said issue the correct check and give them a certain amount of time. But we're not going to award post-judgment interest. Our position is that the post-judgment interest is in discretionary, is mandatory under the statute. There's no dispute the tender was improper. The only issue is the clock running for post-judgment interest, and we think the statute is clear. It's mandatory. It should be. Could you have cashed the check and maybe deposited it into a trust account, got the interest yourself, as opposed to holding on to it or refusing to cash it? I suppose we could have, but that wouldn't change the fact that the payment was conditional. And I think that the case law, I'll have to flip a few pages here to get to the name of the case. It's the Niemeyer v. Wendy's International, Inc. case that says tender has to be an unconditional offer of money. So had we cashed the check and gone through those hurdles, that would have been a conditional tender. Here's your money, but you've got to do X, Y, and Z before or after you get it. Counsel, a threshold question. What's the standard of review? Do we review the trial court's decisions in this case under the abuse of discretion standard? Is that correct? Sentence? Both the attorney's fees and the post-judgment interest? No, I don't believe so. With respect to the attorney's fees issue, yes, that's an abuse of discretion standard. With respect to the whether post-judgment interest accrues from the time of the appellate court ruling, that issue is reviewed de novo because that's just a question of law. Well, what case law do you cite that says that? Because I'm looking at case law that seems to indicate the opposite. Well, the case law is that when there's a question of law, the standard of review is de novo. Well, you're talking about just your general interpretation of the case law. Yes. I'm looking at this case, Niemeyer v. Wendy's International, 336, Illinois Appellate Court, 112. The trial court's award of post-judgment interest lies within its sound discretion and will not be overturned absent an abuse of that discretion. Are you aware of that case? Yes. I believe that the issue in that case was a factual determination of whether or not the tender was proper. And a factual determination of the tender being proper or improper would be reviewed for abuse of discretion. So in a situation where you have to first make that determination, that's reviewed for abuse of discretion because it's a factual question. Was that tender proper? If the tender is proper, then there is no discretion. So there was no dispute over whether or not there was a proper tender? That's not an issue at all? That's our contention. And I believe that the circuit court recognized that. And the defendant also recognized that when he came into court on April 14th and said, we admit we blew it. The check's not right. We will issue a new check. You can finish up. Go ahead. Okay. The one point that I didn't reach was with regard to post-judgment interest accruing from the time of the appellate court order. And we believe that since the circuit court found the amount of the term completion payment was readily calculable back to 2005, post-judgment interest should accrue from the time of the appellate court ruling, because the fundamental rationale underlying all of the post-judgment interest cases is it doesn't matter if you get a specific amount. What matters is, do you have enough information for you to do something to stop the running of the clock? And we think the defendants could have stopped the running of the clock. Thank you, Your Honor. Thank you. Mr. Clark. Good morning. Joe Clark on behalf of defendants and police. In terms of the first issue with regards to the attorney's fees relating to the tax issues, the tax issues came into play in terms of the fees that they expended only by virtue of the settlement discussions that were taking place at the behest of the court. The initial summary judgment motion said that, requested, their summary judgment motion requested that we be, that declaration that we are responsible for this EMP neutralization payment. That wasn't contested by us at any point. It was not appealed. So you agreed that there were taxes that were due and owing by your clients? The actual language was, if it triggered the taxes, we would be responsible for that EMP neutralization payment, yes. And you and your opponents had a more difficult time coming up with an agreed upon amount, isn't that correct? Not an agreed upon amount, no. Agreeing upon the fact that you needed to pay us that amount. No, what we had difficulties in doing was trying to fashion a settlement which would minimize the tax consequences for both sides. We discussed in settlement at the court's behest that there would be, there could be tax, we could structure this, that could be mutually beneficial tax-wise in terms of the EMP neutralization payment that Coventry was responsible for, as well as these 409A taxes that Plaintiff himself was responsible for. They ultimately disagreed with that. And their expert report that they submitted went primarily to the impact of this 409A payment, which was not ever part of the litigation. It was something that is solely Plaintiff's responsibility and not ours. Their expert came out and disagreed that there's any 409A implications, which is helpful from their vantage point in terms of whether or not to fashion a settlement that would be mutually beneficial from a settlement standpoint. But it did not further the litigation in any way. The actual issues that led to 409A was never an issue of litigation. They expended fees trying to look at a possible settlement. They did not expend fees looking at the actual issues here. The actual excise neutralization payment, we always maintain throughout the record, in open statements to court, in our briefs, we would be responsible for that. To expend fees trying to litigate responsibility for that was simply not reasonable fees. At what point was a valid check tendered? For the fees? Or for the interest? For the interest. Was a valid check ever tendered out of interest? Yes. Okay. Yes, that was tendered, I believe. For the excise neutralization payment, I believe we committed to tendering a check on June 1st. We weren't able to tender it until June 8th, and we conceded that we missed that date. We couldn't get it turned around quickly enough. Was that because it was holding? What was the splat about that weren't in the system? There was an issue with withholding that was an impediment to the check? That was for the check for the additional severance payment. And that was, I came in with a check. We didn't do it as if he was still a current employee. And I represented to the court, you know, we can try to cut a new check. And ultimately I went back to the client. He still wasn't in the system with their payroll folks. He said, tender this check and send a letter indicating that we would also be responsible for our portion of the Medicare payments and things like that. Well, while that meter was running, wouldn't it be fair to give them interest because there was, you know, the issue was with regard to your withholding in your system. That wasn't their fault, was it? Well, they had a check. We did. The time period they're seeking this additional interest is the time period from when they, until they had a valid check, the valid check that they ultimately accepted. They had a check in their possession that entire time for an amount that exceeded what we actually tendered. But it didn't have all the withholding taken away from it. They refused to return that check. They could have deposited that, gotten a benefit on it. And the case law indicates that interest should be allowed if they were somehow deprived of the benefit of the check. They kept that the entire time and refused to return it. In terms of the tax issue as well, Your Honor, the primary case to rely upon is the McHenry case. And that case, Your Honor, was broader than the one at issue in that the contractual language in that case was broader than the language at issue in that it didn't contain the prohibition on reasonable fees. And that case also, Your Honor, was a situation where there was an amount that was set in stone and the parties actually did not contest that. So our contention is, Your Honor, that the attorney's fees related to the tax issues were something that were incurred not as part of the litigation and that were incurred in connection with settlement talks and were proper that the court properly exercised its discretion in denying those fees related to the tax issues. And what's your position on the standard of review? Is it abuse of discretion or no? Abuse of discretion, Your Honor. The distinction that counsel drew to the Niemeyer case was that the tender, the propriety of the tender was not at issue. In this case, our tender, the propriety of the tender was at issue. And we pointed out to the court that they have full use of this check that was even larger than the actual check ultimately tendered and accepted, the full time for which they're seeking interest. So the court made a factual determination about whether the tender was appropriate. Hence, it's our position that abuse of discretion standards apply here as well. With respect to the attorney's fees that were not incurred as a result of litigation but were incurred as a result of negotiations, if the initial recommendation by the plaintiff's attorneys was what you initially, what you eventually, the defendant eventually agreed to, isn't that correct? So four months passed, and if you had just agreed to the same amount that you agreed to four months later, all of these fees would not have been incurred, would they? No, in terms of factually, the number that they, they did not come up with a number initially. In terms of this four-month period, there was no number in place. They came up with a number on the CNP later when they filed a second and amended motion for entry of judgment. So during this time period, there wasn't a number out there that we were all, you know, that they were waiting for us to agree to. What we were doing was trying to hash out a settlement for the court's request. But you didn't even initially agree that you owed that tax money, isn't that correct? And it wasn't until some months later that you conceded, yeah, we do, we do owe it. We always, we always conceded, we always admitted that we would be responsible for any EMP neutralization payment. That's in the record from the outset. There is a reference, they make a reference to an affidavit where plaintiff's counsel indicated that in a phone conversation we somehow contested that, but that is, that's belied by not only all of the briefs that were submitted to the lower court where we indicated that we have always accepted responsibility for it, and also in oral statements that I made to the court indicating that we will, you know, we will be responsible for it. And quite frankly, there was already an order that was issued in 2007 indicating that we were responsible for it. So there was zero issue in terms of fighting whether or not we would pay it. The contract says we would pay it. The contract says we would calculate it as well. So to the extent that they were going through attorney's fees or expert fees coming up with a calculation, that was something that was not within, not something that they were to do under the contract. I got to ask you about this in light of your last statement. Apparently in the record there was a December 21, 2009, status hearing. The defense counsel stated, and perhaps it wasn't you, quote, unquote, as to the neutralization payment there will be some legal dispute on that because there's tax issues involved. Yes, Your Honor. So how do you interpret that as a willingness to pay it? It was solely as to the timing of it. They had no more asking for a payment, and we hadn't agreed on an amount either. So there was, there was, that was regarding the timing of whether or not, when the payment should be made. Because it's an excise neutralization payment, it's not something that they're entitled to until the tax would become due. Ultimately, they represented to the court that they wanted, because there had been a ruling on the additional severance on April 29th, that then their tax liability relating to that and the tax liability for the excise neutralization payment, they represented to the court, had to be made by June 15th. Hence, we acquiesced to their request and made the payment by June 1st for the entire excise neutralization payment. But that was never, that was never a contention that we were not responsible for that. That was, they said there would be some issues relating to the tax issue, but it was not a contention that we would not be responsible for it. And at that point, Your Honor, we had not, that was right after you filed his motion for interim judgment, and we quite frankly hadn't done calculations to see whether or not the excise neutralization payment would be triggered. We were always on the hook for it if it's triggered. Another portion of plaintiff's appeal, or appellant's appeal, is the request for pre-judgment interest on the additional severance from the date of the first appellate court order. It's our contention, Your Honor, that the post-judgment interest accrues only on a judgment amounts that are certain. In this, the marriage of Waltra case that we cited in our brief says an award of interest on money judgment requires that the amount of money owed is certain and that the judgment debtor enjoyed improper use of the money during the period for which interest is to be awarded. Or if it could be easily calculated, correct? No, Your Honor, we would say that the, if it's certain, is all the cases that we've cited in terms of post-judgment interest relate to post-judgment interest being appropriate if the money owed is certain. And, Your Honor, in terms of the order setting, the order that came down setting forth the amount of the additional severance payment came down April 29, 2010. Prior to that, there was numerous permutations of that. Plaintiff himself came up with four different permutations of that number. Ultimately, they agreed to the number that we came up with. But they did that, they did that only when they essentially did the math to figure out that the difference between their third number and that fourth number they actually agreed to was smaller than the actual interest that they could try to, if they claimed that the amount was certain and they agreed with our number. In terms of the third issue they have on appeal was a request for post-judgment interest on the amount of pre-judgment interest that grew prior to the first appellate court order. It's our position, Your Honor, just based on the simple fact that there was no award of pre-judgment interest until 4-29-10 that there should not be post-judgment interest on that amount for a date prior to that. What they're trying to do is because the court allowed interest back to the date of termination, that there should be post-judgment interest on that. Are you talking about from March 12th to April 29th? Is that the post-judgment interest you're talking about? Because wasn't there two different periods? March 12th through April 29th and May 5th to May 28th? Yes. Correct, Your Honor. Yes, March 5th through April 28th. May 12th through April 29th, yes. And the trial court held that pre-judgment interest did not begin to accrue until April 29th, correct? Correct. Okay. So it's our position that that's correct. Correct. In addition, Your Honor, in terms of the request for the interest of May 5th through May 28th, 2010, the primary purpose of the post-judgment interest statute is to ensure that they're not deprived of the value of using the monies. They had more than the monies that were actually tendered, and so any award of post-judgment interest should not be awarded. Finally, Your Honor, they also asked for attorney's fees in connection with this appeal. Because it's our view that the appeal is not of merit, we would request that those attorney's fees be denied as well. The court, unless the court has any further questions. I have nothing further. Thank you, Mr. Judge. Thank you very much. Thank you, Your Honors. I'd like to address the contention that the defendants never disputed their obligation to calculate and pay the excise neutralization payment. This gives a false picture of what the case was like and suggests that the parties were hand-in-hand walking down the primrose path. Anything but that is – the actual picture is anything but that. The very first position out of the box in a telephone conference call in December of 2009 was as follows. No excise neutralization payment is due because this is not a severance payment. This is a salary continuation payment. Go away. And that's in the record? That's in the record. That's in the affidavit. I believe that is at page 1125 of the record. This is not a severance payment, so no excise neutralization payment is due. This is despite the fact that they call it a severance payment in their appellate brief to this board 131 times. And it took me a long time to count that. So their next position is, well, an excise neutralization payment is not due until the IRS makes a calculation. So right there is something different. Here they're saying, we never denied we had an obligation to calculate it. In the trial court they said approximately six or seven times, if the IRS makes a determination that excise taxes are due and calculates it, then we'll talk about it. The final position was that, okay, fine, we give up. We agree with your number. The circuit court said the plaintiff was free to talk about these tax issues, but really the defendant had the absolute unfettered discretion under the contract to determine the payment. Well, that's not a correct statement of the law. When there's discretion afforded under a contract, there's an implied obligation of good faith in that discretionary. So you can't just ignore the question. You can't stick your head in the sand and pretend it doesn't exist. You have to do something. So the contract says if it's determined by the company that excise taxes are or would be due, meaning it doesn't matter if the IRS hasn't sent you a bill yet or would be due, then you have to pay the excise neutralization payment. Our position is that's a contractual discretion you've got. You've got to do it right. You've got to do it fairly, and they didn't. What's your response to Mr. Clark's argument with respect to that check? It was tendered to your client, and your client had the check, which was actually in excess as to what they were owed, and therefore they should not have to pay the post-judgment interest. Our position is we had that check, but it wasn't a check that we could use. And we didn't refuse to return it. We were never requested to return it. We immediately wrote and said that the check is improper. If we had cashed the check, there would have been consequences to us in terms of Social Security taxes and Medicare taxes and so forth. So it was a check we could use subject to various conditions. And the Niemeyer case says that the payment has to be unconditional. So if it's subject to conditions, it's not unconditional. With regard to these multiple permutations of the term completion payment, there's no dispute in the record. The plaintiff made several attempts based on imperfect and incomplete information to calculate what that term completion payment was. The circuit court found it doesn't matter what the plaintiff did. And I believe that that's correct. The case law says it's a question of did the defendant have enough information. When the defendant sat down and tried to make the calculation, they did it, and they didn't have any problem doing it. They had every piece of information they needed back in March, in May of 2005, to make that calculation, and they could have done it. Counsel, should we rule in your favor with respect to attorney's fees? What is it that you're seeking from this court? Are you seeking your fees that you've requested or a remand back to the trial court to make a determination as to fees? We are seeking the fees that we requested in the appellate court brief when we set forth the specific amount. And in addition, we are seeking, we are requesting the attorney's fees incurred in this case. At the appeal level? At the appeal level. We would also ask that the appellate court reverse the circuit court's decision to deny post-judgment interest and to deny the post-judgment interest on the tender of the check and the post-judgment interest from the time of the original appeal. Anything else, Justice Switzer? No. Gentlemen, thank you so much for your arguments this morning. Thank you, Your Honors. A decision will be rendered in due course, and the court stands by this. Thank you.